[Crim. No. 8606.   Second Dist., Div. One.   July 30, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM MARTIN McCRAE, Defendant and Appellant.

I. A. Kanarek for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—In two indictments defendant was charged with three violations of section 11531, Health and Safety Code. ■ Found guilty by a jury, he appeals from the judgment of conviction, order denying motion for new trial and order denying motion to arrest judgment. Inasmuch as the two orders are not appealable (Pen. Code, § 1237, subd. 2), the purported appeals therefrom are dismissed.

On October 6, 1961, Police Officer Robert, working undercover in a narcotics investigation, went with one Curtis into Al's restaurant, of which defendant was manager. He said to defendant "What kind of a deal would you let me have on half pound, man?"; he replied, "I don't know; I will let you know when I get it, but I won't be able to do anything until . . . before 1:30. Come back then." Around 1 p.m. the officer returned and, after some discussion, said to defendant, "Look here, Bill, I can't handle a half pound, . . . at $15 a can. I can't handle three cans. Can't you give me a better deal?"; he answered, "The best I can do

is 15 a can." The officer gave him $30 for two "cans"; defendant told him to wait in the car, that he would have it wrapped and send Frank out with it. Later Frank handed the officer a brown paper bag containing marijuana. On October 9, 1961, the officer again saw defendant at Al's; he said, "Hi, Bill, how is everything today?" Defendant asked him how much he wanted and the officer replied, "a can." Defendant told him he would have it in five minutes. The officer gave him $15 and went to his car. Twenty minutes later one Hudson came out and said to the officer, "Give me the bread (money) man." Told by the officer he had already given it to defendant, Hudson said, "Oh, Bill's got the bread already," and handed him two wax paper bags containing marijuana. On October 19, 1961, the officer again went to Al's and ordered a hamburger; defendant said, "What can I do for you today?" They then arranged for the sale of one-half can. Defendant told him all he had was two match boxes, and they could go by "the pad" and pick them up; he would give him the rest later in the evening because he had a "brick" at home that needed processing. They drove to 2149 Ridgley Drive where defendant went into apartment 1. (Defendant acknowledged this to be his residence.) In five minutes he returned and handed the officer a white envelope containing marijuana for which he paid $7.00.

Defendant testified that he was known by various nicknames including "Bill"; that while he was employed at Al's in October 1961, three other persons working there, as well as several customers, were also known as "Bill"; that he did not see the officer in the restaurant in 1961; and that he never sold marijuana to anyone or had it in his home or in the restaurant. Defendant's brother and wife testified that they too worked at the restaurant, and that they never saw the officer or any marijuana either in the restaurant or at his home.

Appellant's main point is that he has not been brought "within the jurisdiction of the Superior Court," and that he was denied due process and equal protection of the laws. (A.O.B., p. 2.) His argument seems to be that the indictments were defective in that the person indicted was not therein adequately named or described so that he could be identified; and that his true name was improperly inserted in the indictments without a sworn statement asserting that he was the person named therein.

■ Two indictments were returned against one charged in each by the fictitious name of "John Doe 'Bill' "; in addition he was described as " (Male Negro, 30-35 yrs., 5'7"-5'10", 150-160 lbs., black hair, brown eyes)." Prior to plea, both indictments were amended to state his true name to be William Martin McCrae. That "John Doe 'Bill' " the person arrested under that name, the one with whom Officer Robert dealt, and William Martin McCrae, are one and the same, there is no doubt. During the trial the officer identified defendant as the person who in October, 1961, three times sold him narcotics at Al's restaurant; he also testified that contemporaneous with each sale he made a report describing him in each as "A male negro approximately 32 to 36 yrs. old, approximately 5 feet 7 inches to 5 feet 10 inches, approximately 155 to 160 lbs., black hair, brown eyes and dark brown complexion . . . defendant was wearing a white chef's uniform and cap, he wore a mustache, a small scar approximately 2" below the right cheek." Defendant described himself as being 32 years old, 5 feet 7 inches tall, weighing 148 pounds and having a 2-inch scar below his right cheek; and testified he wore a mustache and a chef's uniform in Al's restaurant in October 1961. In his opening brief appellant argues that he "had a goatee but no mention of this was made in the description before the grand jury." (A.O.B., p. 3.) This is not an honest argument for while his counsel asserted in a legal argument to the lower court he had a goatee, no place in the record is there any evidence that at any time defendant had worn a goatee. Defendant's description of himself corresponds with that set up in the indictments and that given by the officer in his testimony and police reports. The description in the indictments, identifying defendant even to the name of "Bill," was given by Officer Robert *under oath* before the grand jury. We find no merit in the contention the accused was not adequately named or described so that he could be identified as the defendant herein. In *People* v. *Erving,* 189 Cal.App.2d 283 [11 Cal.Rptr. 203], the indictment designated defendant as " 'Jane Doe (Charlene) female Negro, 39 years, 5'7", weight 165 pounds, olive complexion.' " Unlike the case at bar, there were discrepancies in her description. In fact defendant weighed 110 lbs. and there was some dispute concerning her complexion. The same lawyer made the same argument as he here makes; and the same appellate court held such designation not to be defective, that defendant

was adequately named and described in the indictment. And there, as here, prior to plea the indictment was amended to state her true name (Pen. Code, § 953). "When a defendant is charged by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it must be inserted in the subsequent proceedings, referring to the fact of his being charged by the name mentioned in the accusatory pleading." (§ 953.)

Without substance is appellant's argument that his true name was not properly inserted in the indictments because at the time there was no sworn statement made asserting that he was the person named therein. The description of defendant as set up in the indictments, together with his testimony of three narcotics transactions with defendant, was given under oath before the grand jury by Officer Robert. We know of no authority, nor has any been cited to us, requiring that when defendant's true name is discovered it must be inserted in the accusatory pleading under oath. Neither section 953, Penal Code, nor section 989 requires such an oath to establish the true name of the accused and enter it in the indictment. "When the defendant is arraigned, he must be informed that if the name by which he is prosecuted is not his true name, he must then declare his true name, or be proceeded against by the name in the accusatory pleading. If he gives no other name, the court may proceed accordingly; but if he alleges that another name is his true name, the court must direct an entry thereof in the minutes of the arraignment, and the subsequent proceedings on the accusatory pleading may be had against him by that name, referring also to the name by which he was first charged therein." (Pen. Code, § 989.)

In the early case of *People* v. *Kelly,* 6 Cal. 210, the court, upholding the constitutionality of section 953, discussed the wisdom of the section that avoids the delay and expense of remanding the prisoner for a new indictment when a misnomer is found and allows his true name to be substituted on the trial and the case to proceed in that name. Appellant argued that he was in fact indicted by the trial court because it altered the grand jury indictment by inserting his true name. The contention was dismissed in the following language at pages 213, 214: "In the first place, the indictment was not altered, but the proceeding was made to conform to the proof. . . . As before stated, names are but sounds to designate particular individuals, and, as such, are employed to describe

the person charged with the crime. That clause of the Constitution which provides that no citizen shall be held to answer any criminal charge, except upon a presentment by a grand jury, was intended to provide that the individual charged should be first indicted, not (by the language of the section) by his true name, but the party shall be indicted or presented by a grand jury, and the use of the name is only designed to identify the person. . . ."

"The Constitution directs that the accused should be presented by indictment; not the accused by his true name, but the party or person himself." (*People* v. *Kelly*, 6 Cal. 210, 213.) And in *People* v. *Erving*, 189 Cal.App.2d 283 [11 Cal.Rptr. 203], the indictment was properly amended under section 953 to state defendant's true name; the amendment obviously was not made under oath.

■ In the case at bar, when it was called for arraignment in the name of William Martin McCrae, present counsel appeared as representing "Mr. McCrae"; the Deputy District Attorney then directed himself to defendant: "And John Doe 'Bill,' is your true name William Martin McCrae?" In response defense counsel moved to dismiss the indictments as "inadequate"; the motion was denied. He then refused to permit defendant to identify himself as "John Doe 'Bill'" or divulge his true name. After lengthy discussion with the court, counsel moved for a hearing "so it could be determined if the individual standing before the court was, in fact, the defendant"; the motion was denied. Considerable argument ensued; finally the deputy district attorney read the name and description contained in the indictment and asked defendant: ". . . is your true name John Doe 'Bill'?" Defendant refused to answer primarily on the ground his "answer may tend to incriminate" him. Asked by the court if he was the person arrested as John Doe "Bill," defendant again said, "My answer will tend to incriminate me, sir." After further argument defendant stated that he was the person "brought in by the officers and arrested and booked under the name of John Doe 'Bill'"; he was then arraigned as John Doe "Bill." Later, before plea, the deputy district attorney moved to amend both indictments to show the true name of defendant as William Martin McCrae, stating to the court that he had talked to Sergeant Heckl who told him that defendant told him his name is William Martin McCrae; that Sergeant Heckl talked to Officer Robert who told the former that defendant is the same per-

son he arrested as "John Doe 'Bill' ''; and that Officer Robert is in the courtroom. The motion granted, the true name of defendant was inserted in the place of "John Doe 'Bill.' ''

The indictments were returned against defendant on the sworn statements of Officer Robert; the same person was later arrested under them by the officer and brought before the court; before plea, defendant's true name was discovered and on motion of the People inserted in the pleadings. There is no variation in the description contained in the indictments and defendant's description of himself; and the jury, giving credence to the officer's testimony and observing defendant, believed the accused and the person who dealt with the officer to be one and the same. We fail to see wherein defendant was denied due process.

■ When defendant refused to reveal his true name he was arraigned under the fictitious name of "John Doe 'Bill,' '' complete with description. His constant refusal to declare his name was based on the ground it would tend to incriminate him. There is no such issue here for the record is clear that at no time was defendant forced to give his name. Under section 989 he could give it or not, as he saw fit; he refused. Thus, the alternative under the section was employed—he was "proceeded against by the name in the accusatory pleading,'' until his true name was discovered and entered in the indictments.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 20, 1963, and appellant's petition for a hearing by the Supreme Court was denied September 18, 1963.