EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ DE LA CRUZ MACEIRA, acusado y apelante.

*Número:* CR-76-235          *Resuelto:* 13 de octubre de 1977

*Jaime Rivera Torres,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General, Roberto Armstrong, Jr., Procurador General Interino,* y *Maggie Correa Avilés, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público formuló acusación en 1975 contra José de la Cruz Maceira c/p Papo imputándole tres alegadas infracciones al Art. 401 (a) (1) de la Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2401 (a), consistentes en poseer con intención de distribuir, transportar u ocultar y distribuir marihuana. Hallado culpable se le sentenció a cumplir concurrentemente penas de cinco a siete años de presidio en cada caso.

El apelante nos plantea que la prueba es insuficiente para sostener los veredictos; que un incidente en la vida personal de un testigo de cargo destruyó necesariamente la veracidad

de su testimonio; y que la orden de arresto fue ilegal.

## I

*La suficiencia de la prueba.*

Las determinaciones del jurado hallan amplia base en la prueba. Un agente encubierto de la División de Drogas y Narcóticos de la Policía, Agustín Pujols, declaró que el 16 de enero de 1975 vio en Lares al acusado, a quien conocía por el nombre de "Papo" desde noviembre de 1974. En un encuentro anterior en Lares el acusado había prometido que le conseguiría marihuana. El referido día Papo y Pujols se trasladaron en el automóvil de éste hasta el parque de pelota del pueblo y allí el acusado le vendió al agente dos cajitas de fósforos que contenían marihuana. Pujols pagó por ellas y partió solo para Mayagüez, donde ese mismo día entregó las cajitas a su supervisor, Hiram Ayala Zaragoza. Bastantes días después, ·Pujols le señaló a su supervisor la persona de Papo desde un auto en marcha. Pujols no supo el verdadero nombre del acusado hasta después de su arresto.

En escrupuloso cumplimiento de las normas sentadas en *Pueblo* v. *Ayala Ruiz,* 93 D.P.R. 704, 707–708 (1966) y *Pueblo* v. *González del Valle,* 102 D.P.R. 374–378 (1974), el testimonio del agente encubierto fue ejemplarmente detallado. Hemos expuesto aquí tan solo la esencia de su declaración. El agente Pujols no se limitó a testificar sobre los elementos mínimos de los delitos imputados, sino que describió minuciosamente las circunstancias y resultados de su encomienda; las veces, lugares y fechas en que habló con el acusado; las circunstancias particulares de la transacción y sus acciones posteriores a ésta.

El supervisor Hiram Ayala Zaragoza testificó que el mismo día de los hechos Pujols le había entregado la marihuana en Mayagüez. Un químico de la Policía declaró que las dos cajitas que le entregó en un sobre Ayala Zaragoza, con las iniciales del agente denunciante, contenían mari-

huana. En ausencia de error manifiesto, prejuicio, parcialidad o pasión, no existe fundamento en derecho para que intervengamos con la apreciación de la prueba efectuada por el jurado. *Pueblo v. Rivera Santiago*, 95 D.P.R. 584, 586 (1967); *Pueblo v. Colón Obregón*, 102 D.P.R. 369, 372 (1974).

## II

*El ataque a la veracidad del testimonio del agente supervisor.*

■ En moción de nuevo juicio, el acusado trajo prueba de que el supervisor Hiram Ayala Zaragoza había contraído nuevas nupcias antes de que su sentencia de divorcio fuese final y firme. Entiende el apelante que ello destruyó la veracidad del testimonio del supervisor, convirtiéndolo *per se* en persona mendaz y corrupta.

■ Estimamos que no excedió el tribunal de instancia los límites de su discreción al no acceder a la moción de nuevo juicio. Véase Regla de Procedimiento Criminal 188(a). La conducta impropia que se le imputa al testigo, además, no ataca frontalmente la veracidad de su declaración. La acción del tribunal no viola los principios que sentamos en *Pueblo v. Dones*, 102 D.P.R. 118, 124 (1974). En *Dones* criticamos la antigua regla de *Pueblo v. Hernández Pérez*, 93 D.P.R. 182 (1966), pero advertimos:

". . . No estamos abriendo una compuerta al derrame indiscriminado de evidencia impertinente, extraña al asunto justiciable. La prueba para impugnar al testigo deberá fundarse en actos y hechos específicos y deberá limitarse a las materias relacionadas con veracidad o falsedad. Tampoco habrá de permitirse la introducción en evidencia de incidentes triviales e intrascendentes pues con ello se desnaturalizaría el juicio convirtiéndolo en una pesquisa biográfica del testigo."

## III

*La impugnación de la orden de arresto.*

La orden de arresto en este caso se expidió para el arresto de John Doe c/p Papo. Se incluyó el lugar de su residencia. No se insertaron otras señas particulares. Al conocerse el nombre del sospechoso, la acusación se formuló contra José de la Cruz Maceira c/p Papo y en todos los procedimientos subsiguientes se utilizó el nombre correcto del acusado. El acusado no cuestionó la validez del arresto en el tribunal de instancia. Ante nos argumenta que todo el andamiaje procesal del caso carece de sostén por ser nulo el arresto y que por consiguiente debe revocarse la sentencia.

La Regla 6(b) de Procedimiento Criminal expresa que la orden de arresto "deberá especificar el nombre de la persona o personas a ser arrestadas y, si los nombres son desconocidos, designará a dichas personas mediante la descripción más adecuada posible que las identifique con razonable certeza . . . ." La Regla 6(b) obedece el mandato del Art. II, Sec. 10, de la Constitución de Puerto Rico([1]) y de la cuarta enmienda a la Constitución de Estados Unidos. La parte citada de la Regla 6(b) proviene básicamente del Art. 815 del Código Penal de California y de la Regla 4 federal de Procedimiento Criminal.

Se admite generalmente que una orden para el arresto de "John Doe", a secas, es nula. 1 Wharton, *Criminal Procedure*, 12ª ed., 1974, sec. 55, pág. 153; 1 Wright, *Federal Practice and Procedure*, 1969, sec. 54, pág. 48; *West* v. *Cabell*, 153 U.S. 78 (1894). El conflicto de autoridades emerge al intentar determinar el grado de particularidad que la orden de arresto debe satisfacer.

---

([1]) ". . . Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. . . ."

. En *United States* v. *Swanner*, 237 F.Supp. 69 (E.D. Tenn. S.D. 1964), se invalidó una orden para el arresto de "John Doe, alias Bud Ferguson", al establecerse que nunca se había conocido al acusado por el nombre de Bud Ferguson. El tribunal rechazó por irrelevante la cuestión de si la persona que efectuó el arresto intentaba de hecho aprehender al supuesto Bud Ferguson. Véase: *West* v. *Cabell*, supra, donde se declaró nulo el arresto de Vandy M. West bajo una orden que leía "James West".

En *People* v. *Montoya*, 63 Cal. Rptr. 73 (App. Cal. 1967), se fue aún más lejos. Se anuló una orden para el arresto de "John Doe", a quien se le describió como "blanco, de 30 a 35 años de edad, 5' 10" de estatura, 175 libras, pelo negro, contextura mediana". Estimó el Tribunal, citando abundante jurisprudencia, que la orden pudo ser más específica.

Del otro lado, en *United States of America* v. *$1,058 in United States Currency*, 210 F.Supp. 45, 49 (W.D. Penn. 1962), confirmado por otras razones en 323 F.2d 211 (3d Cir. 1963), se declaró suficiente una orden para el arresto de "John Doe, c/p Piggy". Witkin y Alexander también sancionan esta práctica. Witkin, *California Criminal Procedure*, 1963, sec. 100, págs. 100–101; 1 Alexander, *The Law of Arrest*, 1949, sec. 62, págs. 402–404. Al mismo efecto: *McCoy* v. *State*, 535 S.W.2d 439 (Ark. 1976). Moore estima que en casos de narcóticos, cuando el agente encubierto o el confidente ignora el nombre verdadero del traficante, debe poder emplearse una orden de tipo "John Doe", con la descripción que se tenga disponible, y sustituirse luego con una orden que especifique el nombre correcto. 8 Moore, *Federal Practice*, 2ª ed., 1976, sec. 4.04[1], pág. 4-23. *Caveat: United States* v. *Curtis*, 427 F.2d 630, 632, n. 2 (C.A.D.C. 1970) (*en banc*).

■ Cada caso presenta en efecto una situación diferente. Puede distinguirse entre tipos de órdenes de arresto como la que nos ocupa, dependiendo de la información disponible. Véase: Perkins, *The Tennessee Law of Arrest*, 2 Vand. L.

Rev. 509, 542–544 (1949). En actividades criminales amparadas en la clandestinidad, no es a menudo amplia la información que puede obtenerse en el curso de la operación encubierta, pero la que esté disponible debe incluirse en su totalidad. Existe un mínimo irreducible que la Constitución requiere.

■ En el caso de autos, la orden de arresto debió ser más precisa. El agente había visto al traficante varias veces. Su descripción debió haberse incluido en la orden. Surge, además, de la prueba que el agente Pujols admitió que "Papo" no era el nombre del acusado, que lo que el acusado le había dicho cuando se conocieron era "a mí me dicen el Papo de esto aquí."

■ Aun de determinarse que la orden de arresto fue inadecuada, en estas circunstancias no se afecta el resultado del litigio. La Regla 9 (b) de Procedimiento Criminal dispone:

"Si al llevarse ante el magistrado a la persona arrestada o citada se demostrare que la denuncia o la orden de arresto o citación no nombran o describen con certeza a la persona o al delito que se le imputa, pero hay fundamentos razonables para creer que la persona ha cometido el delito u otro delito, el magistrado no libertará ni exonerará a la persona, sino que hará que se presente una nueva denuncia o expedirá una nueva orden de arresto o citación, según proceda."

En el caso presente no se ordenó la expedición de una nueva orden de arresto, pero se incluyó en el certificado de diligenciamiento, según apunta el Procurador General en su alegato, el nombre exacto del sospechoso. La acusación se formuló también contra José de la Cruz Maceira c/p Papo. El acusado no formuló objeciones contra la orden o la acusación. No se ha demostrado que en la situación descrita se haya incurrido en error perjudicial al acusado. *People* v. *McCrae*, 32 Cal. Rptr. 500 (App. Cal. 1963); *People* v. *Johnson*, 24 Cal. Rptr. 471 (App. Cal. 1962); *People* v. *Erving*, 11 Cal. Rptr. 203 (App.

Cal. 1961). Véase: *Pueblo* v. *García Millán*, 89 D.P.R. 550 (1963).

## IV

*El problema de la multiplicidad de las penas.*

■ Por las razones expuestas en *Pueblo* v. *Meléndez Cartagena*, 106 D.P.R. 338 (1977), se violó el Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321, al imponerse más de una pena por un mismo acto de orden continuado. Bajo la teoría del concurso, que dicho artículo adopta, se anulan las penas impuestas, aunque no las convicciones, por los delitos de poseer con intención de distribuir y por transportar u ocultar marihuana.

*Así modificada, se confirma la sentencia.*

El Juez Asociado Señor Rigau no participó. El Juez Asociado Señor Negrón García concurre en el resultado.