EL PUEBLO DE PUERTO RICO, apelado, *v.* RAMÓN A. MARTÍNEZ TORRES, acusado y apelante.

*Número:* CR-84-21      *Resuelto:* 17 de febrero de 1988

498

*José Enrique Ayoroa Santaliz*, abogado del apelante; *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogado de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El acusado apelante Ramón A. Martínez Torres fue juzgado y convicto por infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, posesión de heroína, y por infracción a la Sec. 5-1120(a) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1152(a), desobedecer la señal de detenerse. Fue sentenciado a penas concurrentes de 3 a 5 años y 6 meses, que le fueron suspendidas.

I

La prueba de cargo estableció que el 6 de junio de 1979, mientras los agentes de la Policía Julio Pérez Tirado, José A.

Campos y Otoniel Figueroa realizaban una ronda preventiva contra el tráfico de drogas en el barrio "La Cuarta" de Ponce, recibieron a través del sistema de radioteléfono de su vehículo un mensaje oficial de parte de su jefe inmediato, el sargento José A. Meléndez Zambrana. Éste informó que en el automóvil marca Volkswagen, color rojo, tablilla 91S669, se había realizado una transacción de drogas en "La Cantera" de Ponce, y que el vehículo había pasado la entrada del barrio "La Cuarta" hacia la Carr. Núm. 1 y se dirigía a Santa Isabel. Unos diez (10) minutos más tarde vieron pasar al vehículo descrito por radioteléfono. El conductor del vehículo no estaba infringiendo la Ley de Vehículos y Tránsito de Puerto Rico ni hacía algo que llamara particularmente la atención de los agentes de la Policía. Los agentes, quienes conducían un vehículo sin identificar y sin sirena, tocaron bocina para detenerlo. De carro a carro, cuando estaban con los vehículos aún en marcha, enseñaron la identificación de uno de los agentes y ordenaron al conductor que se detuviera. El acusado, en vez de obedecer, aceleró. Al ser perseguido por la Policía el vehículo se desvió por un callejón y entró en una plantación de caña donde encontró el paso cerrado por una bomba de riego. El conductor se bajó del automóvil e intentó huir. Tras un breve forcejeo fue capturado y puesto bajo arresto. Al registrarlo encontraron cien (100) *decks* de heroína en sus bolsillos.

En apelación el acusado planteó que el tribunal de instancia erró al no ordenar la supresión de evidencia por ser ésta ocupada en el curso de un arresto y registro ilegal.[1]

---

[1] También señaló, en resumen, la comisión de los errores siguientes:

(1) que la publicación en "El Vocero" una semana antes del juicio de un artículo en que se tacha al acusado de delator del Juez Vargas Negrón y de asesino a sueldo perjudicó la objetividad del veredicto; (2) que hallándose una testigo de defensa en el tribunal, su casa fue allanada por la Policía; (3) que mientras el apelante se encontraba en la Cárcel de Distrito de Ponce en espera de que se

El análisis de este error conlleva que pasemos juicio sobre la legalidad del arresto y del registro efectuados a la luz de la Constitución del Estado Libre Asociado de Puerto Rico, las Reglas de Procedimiento Criminal y la jurisprudencia.[2]

## II

El Art. II, Sec. 10 de la Carta de Derechos de la Constitución del Estado Libre de Puerto Rico, Documentos Históricos, L.P.R.A., Tomo 1, ed. 1982, pág. 299, establece que "[s]ólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse". Esta disposición constitucional tiene tres (3) objetivos básicos: "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión . . .". *E.L.A.* v. *Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984); *Pueblo* v. *Dolce*, 105 D.P.R. 422, 429–431 (1976). Debido a que la protección de la intimidad y dignidad de la persona que ofrece esta cláusula a menudo entra en conflicto con el interés público de combatir la criminalidad, en ocasiones ha de cuestionarse si debería reducirse el derecho individual en pro del interés colectivo. Al enfrentarnos a este dilema, debemos tener presente y ser cons-

---

dictara sentencia, estando aún bajo la jurisdicción del tribunal, fue trasladado a la sección de custodia máxima de la Penitenciaría Estatal, y (4) que el tribunal erró en la apreciación de la prueba.

En vista de la conclusión a que llegamos no es necesario que examinemos estos señalamientos de error.

[2] Las decisiones federales citadas son de naturaleza persuasiva.

cientes de que en el menoscabo de las garantías constitucionales, las cuales son para la protección de todos los ciudadanos, no está la verdadera solución al problema de la criminalidad. Debe tenerse particular cuidado para que a través del proceso adjudicativo de controversias no se ocasione una lamentable erosión de los derechos garantizados por nuestra Constitución. Sobre el particular en *Pueblo* v. *Lebrón*, 108 D.P.R. 324, 327–328 (1979), dijimos:

> ... debemos decir que el temor al crimen y el natural deseo de combatirlo no deben oscurecer el propósito central de la disposición. Libremos el lenguaje original de su glosa abultada. La garantía contra los registros y allanamientos irrazonables representa la voluntad de negarles a los gobiernos mejor intencionados, en aras de una libertad individual preciada, medios eficaces y aun aparentemente indispensables para lograr objetivos meritorios. Se estructuró precisamente ese derecho para proteger al ciudadano aun de los gobiernos democráticos más escrupulosos. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L. Rev. 349, 353 (1974). Por bueno que sea el guardián, siempre existe el problema de quién lo vigila. *Quis custodiet custodiem*. Cuando se descuidan los medios, cuando se disminuyen los derechos fundamentales a nombre de un ansiado orden, lo que viene a perecer al cabo es la libertad y con ella la democracia que se quiso defender.[3]

Aunque el Art II, Sec. 10 de nuestra Constitución, *supra*, exige un mandamiento u orden expedido por autoridad judicial para efectuar un registro o un arresto, la norma no es absoluta. Sobre el particular, en el Informe de la Comisión de la Carta de Derechos se expresó:

> Sin embargo, los mismos medios y propiedades que sirven para el desarrollo y el sostén de la persona pueden ser instrumento de delito o resultado de su comisión. En estos casos

---

[3] Véase, también, *McNabb* v. *United States*, 318 U.S. 332, 347 (1943).

detenerse ante esas fronteras de la personalidad equivaldría a la protección indebida del delito y del delincuente. En esta colisión de lo privado y lo público, la solución se entrega, con todas las garantías, a la autoridad judicial encargada de perseguir y sancionar las transgresiones de la ley. Las garantías personales frente al arresto, el registro, la incautación y el allanamiento tienen su límite en la conducta criminal. Sólo para casos de sospecha fundada o sea cuando medie causa probable —*fuera de situaciones de delito in fraganti determinadas por la ley penal*— *se concede a la autoridad judicial la facultad de expedir mandamientos de arresto y registro*. (Énfasis suplido.)[4]

De conformidad con lo anterior, se ha permitido que los agentes del orden público, según ciertas circunstancias, puedan efectuar registros sin orden judicial. *Pueblo* v. *Malavé González*, 120 D.P.R. 470 (1988). Hemos reconocido como una de estas circunstancias el registro incidental a un arresto legal, teniendo siempre presente que el hecho de que se ocupe evidencia delictiva no convalida un arresto ilegal. *Pueblo* v. *González Rivera*, 100 D.P.R. 651, 655 (1972). Sin embargo, debido a la preferencia constitucional de que los registros se efectúen de conformidad con una orden judicial, cuando se produce una incautación sin haberse cumplido con este requisito se produce una presunción de invalidez en cuanto a dicha actuación. *E.L.A.* v. *Coca Cola Bott. Co.*, supra, pág. 207; *Pueblo* v. *Lebrón*, supra, pág. 329; *Pueblo* v. *González Rivera*, supra, pág. 656. El fiscal entonces viene obligado a probar que el registro realizado fue legal y razonable, que necesariamente conlleva, como requisito previo, demostrar la legalidad del arresto. *Pueblo* v. *Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo* v. *Rivera Rivera*, 117 D.P.R. 283 (1986).

---

[4] 4 Diario de Sesiones de la Asamblea Constituyente 2567–2568 (1951).

## III

La Regla 6 de Procedimiento Criminal(5) establece el procedimiento para la expedición de una orden de arresto de conformidad con el mandato constitucional. *Pueblo* v. *De la Cruz*, 106 D.P.R. 378 (1977). De otra parte, la Regla 11(6) enumera, como excepción al mandato constitucional, algunas de las circunstancias según las cuales se puede efectuar un arresto sin la correspondiente orden judicial.(7) *Pueblo* v. *Rivera Rivera*, supra; *Pueblo* v. *Vázquez Méndez*, supra; *Pueblo* v. *Del Río*, 113 D.P.R. 684 (1982); *Pueblo* v. *Alcalá Fernández*, 109 D.P.R. 326 (1980); *Pueblo* v. *Lebrón*, supra; *Pueblo ex rel. E.P.P.*, 108 D.P.R. 99 (1978); *Pueblo* v. *González Rivera*, supra; *Pueblo* v. *Lafontaine Álvarez*, 98 D.P.R. 75 (1969); *Cepero Rivera* v. *Tribunal Superior*, 93 D.P.R. 245 (1966); *Pueblo* v. *Cabrera Cepeda*, 92 D.P.R. 70 (1965); *Pueblo* v. *Soto*, 77 D.P.R. 206, 210–215 (1954); Secretariado de la Conferencia Judicial, Informe sobre Reglas de Procedimiento Criminal de Puerto Rico, Revisión, 1982, pág. 26. De conformidad con esta regla puede efectuarse un arresto sin orden judicial por un funcionario del orden público:

---

(5) 34 L.P.R.A. Ap. II, R. 6.

(6) 34 L.P.R.A. Ap. II, R. 11.

(7) Esta disposición tiene su origen en el Art. 116 del Código de Enjuiciamiento Criminal de 1935 (34 L.P.R.A. ant. sec. 243) que disponía:

"ARTICULO 116.— (836 Cal.) —[ Cuándo puede un oficial de orden público hacer un arresto] en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto, detener a una persona:

"1. Por un delito público cometido, o que se ha intentado cometer en su presencia.

"2. Cuando la persona arrestada ha cometido 'felony' (delito muy grave), aunque no haya sido en su presencia.

"3. Cuando en realidad se ha cometido 'felony' (delito muy grave), y él tiene motivos racionales para creer que la persona arrestada lo ha cometido.

"4. En virtud de denuncias fundadas en motivos racionales, de la perpetración de un 'felony' (delito muy grave) por la persona arrestada.

"5. Por la noche, cuando haya motivos racionales para creer que la persona arrestada ha cometido un 'felony' (delito muy grave)."

504

(a) cuando se haya cometido un delito en su presencia; (b) cuando la persona arrestada hubiese cometido un delito grave, aunque no en su presencia,[8] y (c) cuando tuviese motivos fundados para creer que la persona ha cometido delito grave.

■ El concepto de motivos fundados se ha definido como aquella *información* y *conocimiento* que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito. *Pueblo* v. *González Rivera*, supra, págs. 654, 655; *Pueblo* v. *Cabrera Cepeda*, supra. Véanse, además: *Pueblo* v. *Alcalá*, supra, págs. 331–332, y *Pueblo ex rel. E.P.P.*, supra. Sobre el concepto de motivos fundados, en *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348, 353 (1977), expresamos que dicha frase es sinónima de causa probable, término utilizado en el contexto de la expedición de una orden de arresto.[9]

■ La exigencia de motivos fundados no impide que los agentes del orden público actúen en forma coordinada y concertada en la persecución de un crimen. En *Pueblo* v. *Luzón*, 113 D.P.R. 315, 324 (1984), consignamos que "el conocimiento de cada agente —cuando trabajan cerca y se mantienen informados— es atribuible a los demás". También di-

---

[8] Aparentemente, el inciso (b) de la Regla 11 de Procedimiento Criminal, *supra*, se refiere a situaciones en que habiéndose expedido orden de arresto el agente que lo efectúa no la tiene en su poder. Véanse: Regla 20 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo* v. *Santiago*, 78 D.P.R. 659, 667–668 (1955); D. Nevares-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, págs. 45–46; *People* v. *Aguilar*, 13 Cal. Rptr. 121 (1961).

[9] Resulta indispensable que el requisito en ambas circunstancias sea similar, pues de lo contrario no habría incentivo para obtener la orden de arresto y se frustraría la protección constitucional. Véanse: *Wong Sun* v. *United States*, 371 U.S. 471, 478, esc. 6 (1962); *Whitely* v. *Warden*, 401 U.S. 560, 566 (1971), y los casos allí citados.

jimos que " '[s]e puede establecer la existencia de causa para justificar un arresto sin orden, basado en información policiaca colectiva al momento del mismo, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las circunstancias. *Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano.*' (Traducción nuestra.)". (Citas omitidas y énfasis suplido.) La labor policiaca se vería entorpecida si los agentes estuvieran impedidos de actuar de acuerdo con instrucciones, órdenes e información que se transmiten de un agente a otro, no sólo de persona a persona, sino a través de cualquier medio de comunicación, especialmente cuando se trata del sistema oficial de radioteléfono. Lo contrario propiciaría la fuga del sospechoso y frustraría la gestión de la Policía. *United States* v. *Robinson*, 536 F.2d 1298, 1299 (1976). No debe haber duda de que un policía puede actuar según la información provista por otro miembro de la fuerza y puede, simplemente, presumir la confiabilidad y certeza de lo comunicado. Sin embargo, cuando se cuestiona la validez de esta actuación en el contexto de una moción de supresión de evidencia, es necesario que se presente evidencia para establecer los motivos fundados que tuvo el agente que dio la orden o que originó la cadena de información que tuvo como resultado que se ordenase el arresto. *Pueblo* v. *Luzón*, supra; W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., St. Paul, Minnesota, West Pub. Co., 1986, Vol. 2, Sec. 3.5, págs. 2–15; J.A. Varon, *Searches, Seizures and Immunities*, 2da ed., Indianápolis, Bobbs-Merrill Book Co., 1974, págs. 127–128. Sólo así puede el Ministerio Público establecer que la incautación producto del arresto sin orden judicial fue efectuada conforme a derecho. *Pueblo* v. *Vázquez Méndez*, supra.

■ El hecho que un agente pueda actuar según una comunicación de otro policía sin tener motivos fundados no significa que el Ministerio Público queda relevado de su deber de presentar evidencia para establecer la legalidad del arresto. Esta posición ha sido asumida por tribunales de diversas jurisdicciones. *U.S. Ex Rel. Mungo* v. *La Vallee*, 522 F.2d 211, 214 (2do Cir. 1975); *State* v. *Richards*, 518 P.2d 113, 115 (Ariz. 1974); *Rowland* v. *State*, 561 S.W.2d 304, 308 (Ark. 1978); *People* v. *Mitchell*, 678 P.2d 990, 992–993 (Colo. 1984); *State* v. *Mooney*, 398 N.E.2d 695, 700 (Ind. App. 1979); *People* v. *Lypka*, 326 N.E.2d 294, 296–297 (N.Y. 1975); *State* v. *Trenidad*, 595 P.2d 957, 958 (Wash. App. 1979). Adoptar la posición contraria conllevaría los resultados siguientes: el Ministerio Público tendría que probar motivos fundados cuando quien efectúa el arresto sin orden judicial es el agente que tiene conocimiento de los motivos fundados para llevar a cabo el arresto. Sin embargo, si este mismo agente, en vez de efectuar por sí mismo el arresto solicita a través del radioteléfono la ayuda de otro agente, y es este último el que realiza el arresto, el Ministerio Público quedaría relevado de probar los motivos fundados. Los tribunales, por lo tanto, no tendrían la oportunidad de pasar juicio sobre la suficiencia de los motivos fundados para el arresto sin orden judicial. LaFave, *supra*, pág. 7. Según estas circunstancias la facultad de determinar la procedencia de un arresto sin orden judicial quedaría enteramente al arbitrio de los policías, sin posibilidad de una efectiva intervención judicial para evaluar su corrección. Esta posición es constitucionalmente insostenible; está en claro conflicto con el mandato constitucional.

■ En el caso de autos no hubo prueba sobre los motivos fundados que pudo haber tenido el sargento Meléndez Zambrana para solicitar la ayuda de los agentes Pérez

Tirado, Campos y Figueroa. No sabemos según qué informa-
ción el sargento Meléndez Zambrana llegó a conocer los he-
chos que dieron origen a su orden. Pudo haber sido por
información recibida de algún confidente o informante de la
Policía, por conocimiento personal, por información recibida
de algún otro agente con conocimiento personal de la infor-
mación, o por información brindada por algún testigo pre-
sencial o participante en la alegada transacción. Cada una de
estas posibilidades requeriría un análisis distinto sobre la
suficiencia de la información y su credibilidad para propó-
sitos de la determinación de motivos fundados, y la legalidad
del arresto y subsiguiente registro e incautación del material
delictivo. Resolvemos, pues, que la admisibilidad en eviden-
cia del material obtenido en un registro incidental a un
arresto sin orden judicial, que ha descansado en un mensaje
transmitido de un agente de la Policía a otro, en este caso por
el sistema oficial de comunicación, dependerá de si el oficial
que inició la cadena de eventos que resultó en el mensaje
transmitido a los agentes que efectuaron el arresto, poseía
motivos fundados para ordenar el mismo.[10] No es necesario

[10] El Tribunal Supremo de Estados Unidos al resolverse una controversia
sobre la existencia de motivos fundados o causa probable al efectuarse un arresto
sin orden judicial según una comunicación radial, al amparo de dicha disposición
constitucional expresó:

"We do not, of course, question that the Laramie police were entitled to act
on the strength of the radio bulletin. Certainly *police officers called upon to aid
other officers in executing arrest warrants are entitled to assume that the offi-
cers requesting aid offered the magistrate the information requisite to support
an independent judicial assessment of probable cause.* Where, however, the con-
trary turns out to be true, an otherwise illegal arrest cannot be insulated from
challenge by the decision of the instigating officer to rely on fellow officers to
make the arrest." (Énfasis suplido.) *Whiteley* v. *Warden,* supra, pág. 568.

En *United States* v. *Hensley,* 469 U.S. 221, 230–231 (1983), al referirse al
caso de *Whiteley* v. *Warden,* supra, el Tribunal Supremo federal indicó:

"This language in *Whiteley* suggests that, had the sheriff who issued the
radio bulletin possessed probable cause for arrest, then the Laramie police could
have properly arrested the defendant even though they were unaware of the
specific facts that established probable cause. See *United States* v. *Maryland,*

que el agente que recibe el mensaje contrainterrogue al que lo envía para determinar si existían o no los motivos fundados. Permitir un arresto o registro de acuerdo con una orden de un policía, sin la intervención judicial y sin que luego un tribunal pueda oír prueba y pasar juicio sobre motivos fundados, abriría peligrosamente las puertas a registros ilegales irrazonables y arbitrarios.(¹¹) En el caso de

---

479 F.2d 566, 569 (CA5 1973). *Thus Whiteley supports the proposition that, when evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest.* It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance. In an era when criminal suspects are increasingly mobile and increasingly likely to flee across jurisdictional boundaries, this rule is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction." (Énfasis suplido y en el original.)

(¹¹) En la opinión disidente se expresa que la posición del apelante es equivocada, pues "[p]arte de la hipótesis de que *sólo* si el Sgto. José A. Meléndez Zambrana hubiera observado la comisión del delito, únicamente así el arresto y registro sería legal". (Énfasis suplido.) Opinión disidente, pág. 510. Este argumento es incorrecto. No debe haber duda que los agentes que efectuaron el arresto podían hacerlo confiando en la suficiencia de la comunicación del sargento Meléndez Zambrana. Esto no está en controversia. Aceptado que podían actuar según dicha información el problema se reduce a determinar si el Estado tenía que presentar prueba para establecer los motivos fundados que tuvo el sargento Meléndez Zambrana para solicitar la ayuda de los agentes. Esto no quiere decir que el arresto sería legal *sólo* si él observó la comisión del delito. La tenencia de motivos fundados por el sargento Meléndez Zambrana pudo estar basada en conocimiento e información.

Se argumenta además en dicha ponencia que, en todo caso, evaluada la información como una confidencia era suficiente para el arresto, pues ellos pudieron corroborar la descripción del vehículo. Cita en apoyo lo resuelto en *Pueblo v. Cruz Rivera*, 100 D.P.R. 345 (1971). Tal análisis es incorrecto. Los principios establecidos para los casos de confidencia no son trasladables a este tipo de situación. El argumento es un *non sequitur*. Cuando la información es suministrada por un agente, el policía que la recibe no tiene que corroborarla y puede actuar según ella.

Finalmente, y en lo que respecta al argumento de que al no detenerse el acusado y huir, esto "generó" de manera independiente bastantes motivos o razones para arrestarlo; cabe señalar que los agentes conducían un vehículo sin identificar, sin sirena, que se le aparearon tocando bocina y de carro a carro le

autos el problema consistió precisamente en que no se presentó prueba sobre motivos fundados. El tribunal no tuvo la oportunidad de evaluar la suficiencia de éstos. Aún subsiste la interrogante de si el sargento Meléndez Zambrana, el oficial de la Policía que originó el mensaje, tenía o no motivos fundados para solicitar que se realizara un arresto sin orden judicial. No desfiló prueba sobre este particular por lo que la prueba presentada, los *decks* de heroína, fueron incorrectamente admitidos en evidencia. Por lo tanto, *se revoca la sentencia y se devuelve el caso al tribunal de instancia para ulteriores procedimientos compatibles con lo aquí resuelto.*

El Juez Asociado Señor Negrón García emitió opinión disidente. El Juez Asociado Señor Ortiz disiente por entender que de la totalidad de las circunstancias presentes se desprende que los agentes del orden público tenían motivos fundados para intervenir con el señor Martínez Torres.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

"Cada arresto, registro o allanamiento constituye una frontera en la cual se confrontan críticamente de un lado los derechos del individuo y su dignidad personal y del otro el derecho de la sociedad de protegerse a sí misma y de proteger a los más débiles de los delincuentes. Es muy difícil, quizás imposible, redactar reglas que resuelvan este problema de crisis fronteriza de una vez y para siempre. Pero como *nos confrontamos con una situación práctica, de hechos que en forma parecida ocurren con frecuencia, debemos procurar establecer lo más claramente posible la norma aunque de antemano reconozcamos que no es per-*

---

mostraron la identificación de uno de los agentes. Estas circunstancias no eran suficientes como para concluir que el acusado se dio a la fuga.

*fecta.*" (Énfasis suplido.) *Pueblo* v. *Costoso Caballero*, 100 D.P.R. 147, 152 (1971).

En ese delicado equilibrio, inclinamos la balanza en favor del Estado. La opinión del Tribunal reconoce correctamente que el concepto de motivos fundados para arrestar consignado en la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, es compatible con la persecución del crimen al actuar los miembros de la Policía coordinada y concertadamente mediante el sistema de radioteléfono. Expone, además, que los policías recipientes de los mensajes radiales pueden presumir que quienes los originan tienen motivos fundados, pero que dicha cuestión dependerá de que el Estado presente oportunamente evidencia para establecer tales motivos, en este caso el testimonio del agente que "inició la cadena de eventos que resultó en el mensaje transmitido". Sin embargo, concluye que como el Ministerio Fiscal no presentó a dicho testigo, el sargento Meléndez Zambrana, no probó la existencia de motivos fundados y procede suprimir la evidencia. Discrepamos.

La dificultad de este análisis es que choca con la apreciación total e integral de la prueba. Parte de la hipótesis de que sólo si el Sgto. José A. Meléndez Zambrana, hubiera observado la comisión del delito, únicamente así el arresto y registro sería legal. En el trasfondo fáctico de autos dicho enfoque es limitado. No toma en consideración la facultad investigativa de la Policía y la fluidez situacional en que aquí ella se produce. Expongamos el trasfondo fáctico.

La prueba de cargo —consistente en los testimonios de los agentes de la Policía Julio Pérez Tirado, José A. Campos y el químico José Edison Matías— estableció que el 6 de junio de 1979 los primeros dos agentes, en unión a Otoniel Figueroa, tenían asignada la tarea de realizar una ronda preventiva contra el tráfico de drogas en el área de Ponce y sus barrios. Mientras la realizaban en el barrio "La Cuarta", a

través del sistema de radioteléfono de su vehículo recibieron un mensaje oficial a nombre de su jefe inmediato, el sargento Meléndez Zambrana, quien instruyó de que estuvieran atentos a un automóvil marca Volkswagen, color rojo, tablilla 91S669, que se dirigía hacia Santa Isabel y en el cual se había realizado una transacción ilegal de drogas en el sector "La Cantera". Después de recibir el mensaje los agentes salieron hacia la Carr. Núm. 1 y decidieron situarse más allá de un puente. Así advertidos, aproximadamente diez (10) minutos después los agentes observaron el vehículo antes descrito. Su conductor no infringía la Ley de Vehículos y Tránsito de Puerto Rico y su discurrir era normal. Los agentes se aparearon al Volkswagen y, al tiempo que el agente Campos mostraba su tarjeta de identificación, ordenaron al conductor que se detuviera. Éste, en vez de obedecer, aceleró la velocidad y emprendió la fuga. Los agentes lo persiguieron. El Volkswagen, al ser perseguido por los agentes de la Policía, giró a la izquierda con dirección al barrio "La Cuarta", luego dobló en la primera entrada y penetró en un callejón entre una plantación de caña. Sin embargo, encontró el paso cerrado por una bomba de riego. Entonces su conductor se bajó del automóvil e intentó infructuosamente huir. Fue detenido y, tras un breve forcejeo, puesto bajo arresto. Resultó ser Ramón Antonio Martínez Torres. El agente Pérez Tirado lo registró y encontró cien (100) *decks* de heroína en sus bolsillos.

En las circunstancias más favorables hacia el apelante Martínez Torres —evaluada la información como una incompleta, producto de una confidencia más bien que de la observación personal por el oficial Meléndez Zambrana— el resultado sería gobernado por *Pueblo* v. *Cruz Rivera*, 100 D.P.R. 345, 348 (1971). Allí, en lo referente a una confidencia, dijimos que "la confiabilidad de la misma fue fortalecida por las observaciones de los policías respecto a la exactitud de la

descripción dada por el informante del automóvil y del lugar en que se encontraba así como de los actos que se cometían. *El que la información producida por la confidencia constituya prueba de referencia no destruye su validez para determinar motivos fundados para arrestar.* Ya hemos adoptado en esta jurisdicción el principio de que la información recibida de un informante confiable, corroborada por las observaciones de un agente respecto a la exactitud de la descripción de un acusado ofrecida por el informante y de la presencia de aquél en un sitio específico es suficiente para establecer motivos fundados para un arresto sin mandamiento. *Pueblo* v. *Flores Valentín*, [88 D.P.R. 913 (1963)]; *Ker* v. *California*, 374 U.S. 23 (1963); *Draper* v. *United States*, 358 U.S. 307 (1959)". (Énfasis suplido.) Véase, además, *Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770, 774–775 (1982).

La opinión se aparta de esa norma y, en contraste con la figura de un *informante confiable*, sitúa a un sargento de la Policía en una posición subordinada, en cuanto a su confiabilidad, dándole distinto tratamiento. Además, debilita la facultad investigativa de la Policía según expuesta en *Pueblo* v. *Ortiz Martínez*, 116 D.P.R. 139, 144 (1985):

La Policía de Puerto Rico, en protección de la ciudadanía en general, tiene perfecto derecho a patrullar las vías públicas de nuestro país. Como corolario de ese derecho, tiene la obligación de *investigar* toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva. Los dos agentes del orden público envueltos en el presente caso, en cumplimiento de su deber, así actuaron. Al acercarse al lugar específico indicado no sólo pudieron corroborar la presencia de dos individuos que respondían exactamente a la descripción brindada, sino que pudieron percatarse del hecho singular adicional de que estos individuos, al notar la presencia del auto patrulla, comenzaron a correr a la misma vez y en la misma dirección. Si bien es cierto que, hasta ese momento, las circunstancias apuntadas no eran suficientes

para proceder al arresto de dichas personas al amparo de las disposiciones de la Regla 11 de las de Procedimiento Criminal, *no es menos cierto que dichas circunstancias, por ser altamente peculiares, exigían que los referidos agentes del orden público continuaran la gestión investigativa legítima comenzada, sobre todo cuando consideramos que su actuación se limitó a seguir a los individuos en su patrulla por una vía pública en la investigación de la confidencia recibida.* Cf. Pueblo v. *Díaz Díaz*, 106 D.P.R. 348 (1977). (Énfasis suplido y en el original.)

## II

·Igual enfoque debería prevalecer. Independientemente de que el sargento Meléndez Zambrana no fuera presentado como testigo, es incontrovertible que los agentes Pérez Tirado, Campos y Figueroa recibieron información exacta que describía determinado automóvil donde supuestamente se transportaba heroína ilegalmente y el cual se dirigía hacia el área donde ellos prestaban vigilancia. Esa información los alertó. Generó una *sospecha razonable* que naturalmente ameritaba investigarse. Poco tiempo después vieron acercarse al vehículo. En ese instante inicial, quedó corroborada parte de la información radiocomunicada. Entonces los agentes se le aparearon al vehículo y, previa identificación, pidieron al conductor que se detuviera. *Éste hizo caso omiso, aceleró la marcha y huyó.* En ese momento, para efectos de motivos fundados, quedó robustecida la información original. Los agentes lo persiguieron. Tras un recorrido que incluyó un callejón entre desoladas siembras de caña, el conductor se vio frustrado de continuar su huida por encontrarse súbitamente con el obstáculo de una bomba de agua entre los sembrados. *Optó por abandonar el vehículo y salir corriendo hasta que los agentes lo alcanzaron.* En ese momento es registrado y se hallan en su persona cien (100) *decks* de heroína. Ante estos hechos, ¿puede realmente sostenerse que el acusado Martínez Torres no "se dio a la fuga"? No se cues-

tiona persuasivamente la licitud del registro en esta etapa. Ante estos hechos, ¿puede afirmarse que los mencionados agentes carecían de suficientes motivos fundados para proceder al arresto? ¿Es que la información radial que desencadenó la investigación legítima no podían presumirla correcta? ¿Significa que la orden del sargento Meléndez Zambrana no era confiable? Todas estas interrogantes requieren respuestas afirmativas como única solución lógica de que "un agente pued[e] actuar a base de una comunicación de otro policía sin tener motivos fundados".

En resumen, *la información* recibida radialmente fue corroborada en cuanto a exactitud del vehículo y del lugar. Además, la actuación del apelante Martínez Torres de no detenerse, sino huir para luego abandonar el auto, a juicio nuestro *generó de manera independiente bastantes motivos fundados o razones para arrestarlo.* Lo que al inicio sólo fue una investigación limitada, fue ampliada y completada por su conducta, más que sospechosa. En estas circunstancias, ¿podemos entonces tachar de irrazonable bajo la Constitución la intervención policiaca. Véase *Pueblo* v. *Rodríguez*, 91 D.P.R. 157, 161 (1964). Como expusimos en nuestro disenso en *Pueblo* v. *Malavé González*, 120 D.P.R. 470, 490-491 (1988):

> [E]l concepto de motivos fundados —como sinónimo de causa probable, *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348, 353 (1977)— no es un férreo producto de un examen o experimento a posteriori en el laboratorio aséptico judicial. Tampoco corresponde al mundo de lo académico. No es teórico ni abstracto, sino esencialmente pragmático. Lo que se le exige al policía son motivos fundados, a saber, razones suficientes o eficaces. Ello excluye certeza matemática y menos evidencia de culpabilidad. A tal efecto la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, exige "tener motivos fundados para *creer*". *Creer* significa "tener por cierta una cosa que el entendimiento no alcanza o que no está comprobada o demostrada". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 395.

En nuestra jurisprudencia ha cristalizado el enfoque que "un funcionario de[l] orden público puede efectuar un arresto sin la orden correspondiente, entre otros casos, cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, *independientemente de que dicho delito se hubiese cometido o no en realidad.* Regla 11 de Procedimiento Criminal de Puerto Rico, 2 *Práctica Forense*, pág. 20 (1964). La jurisprudencia enmarca el concepto de 'motivo fundado' en la posesión de aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido delito. *Pueblo v. Cabrera Cepeda*, 92 D.P.R. 70, 74 (1965); *Cepero Rivera v. Tribunal Superior*, 93 D.P.R. 245, 248 (1966). La conducta del funcionario público se juzga pues en orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez". *Pueblo v. Alcalá Fernández*, 109 D.P.R. 326, 331–332 (1980); *Pueblo v. Lafontaine Álvarez*, 98 D.P.R. 75, 81 (1969).

. . . [E]l adjetivo *razonable* viene del latín *"rationabilis"* que significa "arreglado, justo, conforme a razón. 2. ant. racional". *Diccionario de la Lengua Española, op. cit.*, T. II, pág. 1147. Como tal, es obrar con discernimiento. Versa sobre realidades eminentemente pragmáticas, de carácter relativo y flexible. No es estático. En diferentes épocas y momentos conlleva variados significados y grados. Se puede dar sobre situaciones inesperadas, más o menos imperiosas y urgentes, en que la libertad y curso de acción para actuar de diversos modos se reduce notablemente. Lo razonable descansa en lo moderado, en la cautela, prudencia, en la acción u omisión. Por ende, la variabilidad en el comportamiento del ser humano involucrado en todo acto criminoso y los distintos trasfondos del acto (sitio, hora, personas, edades y naturaleza y gravedad) son factores pertinentes para evaluar la razonabilidad de un registro y allanamiento hecho sin orden judicial. (Énfasis suplido y en el original.)

En Puerto Rico, al igual que en muchas jurisdicciones estatales norteamericanas, según la Sec. 1120(a) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1152(a),

todo conductor viene obligado a detenerse a requerimiento de la Policía si existe una *"razonable sospecha* de que el conductor no tiene licencia, o el vehículo no está registrado, *o que tanto el vehículo como su ocupante están sujetos a arresto por violación de la ley"*. (Traducción nuestra y énfasis suplido.) *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979).

La decisión emitida sacrifica innecesariamente esta importante norma. Procede reproducir, en lo pertinente, nuestro disenso en *Pueblo* v. *Martínez Martí*, 115 D.P.R. 832, 853–854:

> Para ultimar, opinamos que en este caso, frente a la malicia, taimería e inventiva delictiva en el tráfico de drogas, imponemos injustificadamente a la Policía serias restricciones a su imaginación y capacidad de acción. Nuestra sentencia, si constituye derecho, es torcido. Es ajeno a las realidades de la sociedad en que opera. No cumple las necesidades del Puerto Rico de hoy, *Pueblo* v. *Batista Montañez*, 113 D.P.R. 307 (1982). Cabe recordar la siguiente admonición: "El Derecho no se produce y realiza en abstracto, desligado de los estímulos que la vida y la diaria experiencia le acarrean. Son las acciones de los hombres, sus cuitas y sus esperanzas, las que ocupan las previsiones del legislador. Asesorar a aquéllos, prescribirles normas de conducta, definir sus derechos en liza, y utilizar para ello fórmulas que puedan parecerles esotéricas o abstractas, resulta tan ilógico como la conducta de aquellos médicos a que se refiere Ossorio, que seguían hablando y recetando en latín cuando ya nadie entendía este idioma." [F.] Soto Nieto [*Compromisos de Justicia*, Madrid, Ed. Montecorvo, 1977], pág. 254.