# 2006 DTA 41

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL X**

EL PUEBLO DE PUERTO RICO EN INTERÉS DEL MENOR F. T. G.

Núm. KLCE-2005-01756

San Juan, Puerto Rico, a 27 de enero de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Colón Birriel y Hernández Torres

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCIÓN

### I

La peticionaria, la menor F.T.G. (la *"menor"*), recurre de una **Resolución** emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (el *"TPI"*), Miguel P. Cancio Bigas, Juez, el 9 de noviembre de 2005, transcrita el 15 de ese mes y año y notificada el 12 de diciembre de ese año. Mediante el dictamen se declaró **Sin Lugar** su solicitud de supresión de evidencia encaminada a eliminar cierta evidencia que el Procurador de Asuntos de Menores se proponía presentar en la vista adjudicativa seguida en su contra.

En consideración a que el dictamen recurrido carecía de fundamentos, lo que nos dificultaba nuestra función revisora, en *Resolución* de 22 de diciembre, concedimos término al Honorable Juez Miguel P. Cancio Bigas para fundamentarlo. Cumpliendo con lo ordenado, el magistrado procedió a emitir **Resolución** el 4 de enero de 2006.

Resolvemos con el beneficio de los escritos y del derecho aplicable, no sin antes exponer lo acontecido.

### II

El 15 de marzo de 2005, el Pueblo de Puerto Rico presentó en interés de la menor F.T.G. dos (2) quejas por la comisión de dos (2) faltas, a saber, una por el Artículo 5.04 y la otra por el Artículo 5.10 de la Ley de Armas. Mediante la violación al Artículo 5.10 de la Ley de Armas se le imputó, que allá en o para el 14 de marzo de 2005, a eso de las 9:45 p.m., en Guánica, Puerto Rico, actuando en concierto y común acuerdo con dos menores y un adulto tenía en su posesión una pistola 9mm, color negra a la cual se le había removido, mutilado, cubierto o permanentemente alterado o borrado su número de serie. En el Artículo 5.04 se le imputó portar la referida arma sin licencia la que se utilizó para disparar en un lugar público. En consideración a las quejas presentadas, se expidió la correspondiente orden de aprehensión dejándose a la menor bajo la custodia de sus padres.

Tras la determinación de causa probable para radicar la querella se señaló la vista adjudicativa. Así las cosas, el 24 de junio de 2005, la representación de la menor solicitó la supresión del arma ocupada que se pretendía someter en evidencia. Alegó, en lo pertinente, que el agente que intervino con ésta no tenía motivos fundados para hacerlo; y que la incautación del arma constituía un registro ilegal en violación a la Sección 10 del Artículo 11 de la Constitución del Estado Libre Asociado de Puerto Rico, sobre registros e incautaciones ilegales e irrazonables. Por su parte, el Procurador de Menores (el *"Procurador"*) se opuso a la supresión solicitada.

La vista para dilucidar la supresión se celebró el 9 de noviembre de 2005. En la audiencia, el Procurador presentó el testimonio de tres agentes del orden público a los fines de rebatir la alegación de la menor de que la incautación del arma de fuego sin orden judicial previa violaba la referida cláusula constitucional lo que hacía inadmisible la evidencia incautada por ser producto de un registro ilegal.

En la vista de supresión prestaron testimonio dos de los tres agentes, estipulándose el testimonio del otro agente, a los efectos que de declarar, enunciaría que fue quien ocupó el arma de fuego a que se interesa suprimir. Surge del dictamen recurrido, que el policía Municipal Hiram Rosas Vega declaró que a eso de las 9:45 p.m. transitaba en su vehículo personal por la carretera 333 en dirección al sector Jaboncillo del pueblo de Guánica a los fines de visitar unas amistades en Caña Gorda; como a 100 metros observó un automóvil o guagua Pathfinder color dorada, detenida en el medio de la calle con cuatro ocupantes; escuchó detonaciones de disparos de un arma de fuego provenientes del interior de dicho vehículo. Describió el área en que ocurren los hechos como obscura y con árboles en los alrededores. En el lugar no habían otros automóviles, ni otras

personas. Declaró que no vio quién de los ocupantes disparó y que las detonaciones salieron de la guagua Pathfinder.

Al encontrarse con esa situación, el policía Rosas Vega reaccionó a la defensiva colocándose hacia el lado de la carretera, detuvo su marcha por breves momentos esperando que las detonaciones cesaran. Estando detenido en el lado de la carretera, la guagua Pathfinder siguió su marcha pasándole por el lado. El policía Rosas Vega esperó que le pasaran y más adelante dobló en forma de "*u*" para seguirlos. Tomó el número de la tablilla que resultó ser la EUT-139; llamó por su teléfono celular al Cuartel de la policía Municipal solicitando una patrulla. Le informó al retén Villanueva lo que observó y oyó, indicándole su localización y que seguiría a la guagua Pathfinder hasta que llegara la patrulla. Posteriormente, se personó a los alrededores en un carro patrulla, la Sargento Marilú Collado Morales.

Durante su testimonio, la Sargento Collado Morales declaró que se encontraba en el sector de la carretera 116 en dirección de Guánica hacia Yauco cuando recibió por radioteléfono información e instrucciones de auxiliar al policía Rosas Vega. Se le informó sobre la descripción de la guagua Pathfinder, su tablilla y que el policía Rosas Vega se encontraba en el área, siguiéndola.

El policía Rosas Vega pasó en su vehículo por el lado de la patrulla conducida por la Sargento Collado Morales, haciéndole señas del vehículo que seguía al frente de él. La Sargento Collado Morales procedió a unirse a la persecución prendiendo el biombo y la sirena de su patrulla. Finalmente, detuvieron a la guagua Pathfinder en el kilómetro 24.1 de la carretera 116. Posteriormente, llegaron al lugar otros policías.

Se le ordenó al conductor de la Pathfinder sacar las manos por la ventana. La Sargento Collado Morales se percató de otros tres ocupantes dentro de la guagua, ordenándoles bajarse. Dejaron un arma de fuego en el asiento de atrás del pasajero. Uno de los ocupantes hizo resistencia, tomó el arma, pero finalmente la soltó una vez fue amenazado por la Sargento Collado Morales. El referido ocupante colocó el arma otra vez sobre el asiento. El conductor, que aún continuaba dentro del vehículo, aceleró su marcha con las puertas abiertas dándose a la fuga. Fue arrestado más adelante por el policía estatal Efraín Hernández, quien ocupó el arma. La menor querellada iba en el asiento de atrás del lado izquierdo de la guagua Pathfinder. Fue detenida luego de bajarse del vehículo sin oponer resistencia. El arma fue descrita como una Rugger, calibre 9 milímetros, negra y plateada. Estaba cargada con tres balas y tenía su número de serie mutilado.

Finalizada la vista, se declaró **No Ha Lugar** la supresión solicitada.

Inconforme, la menor le imputa error al foro recurrido al no suprimir la evidencia ocupada (el revólver), toda vez que como cuestión de hecho y de derecho no existían motivos fundados para intervenir con ella, por lo que conforme al mandato constitucional debió haberse suprimido la evidencia ocupada. Es decir, que el tribunal de instancia erró al no ordenar la supresión de evidencia por ser ocupada en el curso de un arresto y registro ilegal. El análisis del error conlleva el pasar juicio sobre la legalidad del arresto y del registro a la luz de nuestra Constitución, las Reglas de Procedimiento Criminal y la jurisprudencia aplicable.

### III

El Artículo II, Sección 1 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico dispone que, de ordinario, queda prohibido el arresto de personas o registros o allanamientos sin una previa orden judicial, apoyada en una determinación de causa probable por un foro judicial. *Pueblo v. Calderón Díaz,* Op. de 5 de abril de 2002, **2002 J.T.S. 46**, a la pág. 935.

Esta disposición constitucional tiene tres (3) objetivos básicos: *"proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión." Pueblo v.*

*Martínez Torres*, 120 D.P.R. 496, 500 (1988); *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984); *Pueblo v. Dolce*, 105 D.P.R. 422, 429-431 (1976).

La Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 6, dispone sobre el procedimiento para expedir una orden de arresto acorde con el mandato constitucional. *Pueblo v. De la Cruz,* 106 D.P.R. 378, 383 (1977).

Como correctamente señaló el foro recurrido, planteado que un registro o incautación se realizó sin orden judicial, se presume su ilegalidad. Es decir, surge *prima facie* la presunción de que es una invasión indebida a la intimidad y privacidad de la persona, que viola la referida cláusula constitucional. Ante una moción para que se suprima la evidencia que se pretende presentar, el Ministerio Público viene obligado a demostrar que se dan algunas de las circunstancias o excepciones bajo las cuales se permite que se lleve a cabo el registro sin previa orden judicial. *Pueblo v. Echevarría Arroyo*, Sentencia (publicada) de 11 de junio de 2002, **2002 J.T.S. 84**, a la pág. 1245.

Entre las excepciones, se encuentran casos en que se permite el registro de la persona y del área, si es incidental a un arresto legal; o cuando ocurre en una situación de emergencia; o cuando la evidencia se encuentra a plena vista; o se descubre por el olfato del agente; o cuando ha sido incautada luego de ser arrojada o abandonada. *Pueblo v. Ortiz Zayas*, 122 D.P.R. 567, 571-572 (1988); *Pueblo v. Rivera Collazo*, 122 D.P.R.408, 415-416 (1988); *Pueblo v. Malavé González*, 120 D.P.R. 470, 478 (1988); *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 779 (1982); *Pueblo v. Lebrón*, 108 D.P.R. 324, 329-330 (1979); *Dolce*, 105 D.P.R., a la pág. 436 422; *Pueblo v. Sosa Díaz*, 90 D.P.R.622, 631 (1964). En *Pueblo v. Costoso Caballero*, 100 D.P.R. 147, 152-153 (1971), nuestro alto foro expresó:

*"Es permisible un registro sin orden de allanamiento efectuado en la persona de un arrestado y del área que está a su alcance inmediato. Como hemos dicho antes, esto se justifica para ocupar armas que puedan ser empuñadas y utilizadas por el acusado para agredir a los agentes del orden público o para intentar una fuga, y para ocupar evidencia que de otro modo el arrestado podría destruir."*

Por otro lado, la Regla 11 de dicho cuerpo de reglas enumera, como excepción al mandato constitucional, algunas de las circunstancias según las cuales se puede efectuar un arresto sin la correspondiente orden judicial. De conformidad con esta regla, puede efectuarse un arresto sin orden judicial por un funcionario del orden público:

*"(a) Cuando tuviera motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto.*

*(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.*

*(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad."* 34 L.P.R.A. Ap. II, R. 11.

Reiteradamente, nuestro Tribunal Supremo ha expresado que el término *"motivos fundados"* contenido en la citada Regla 11 significa la posesión de *aquella información o conocimiento* que lleven a una persona ordinaria y prudente a creer que la persona a ser detenida ha cometido o va a cometer un delito, independientemente de que luego se establezca o no la comisión del delito. *Pueblo v. Colón Bernier*, 148 D.P.R. 135, 142 (1999): *Pueblo v. Ruiz Bosch,* 127 D.P.R. 762, 770 (1991); *Pueblo v. Martínez Torres,* 120 D.P.R. 496, 504 (1988);

*Pueblo v. Del Río*, 113 D.P.R. 684, 690 (1982); *Pueblo v. González Rivera*, 100 D.P.R. 651, 654-655 (1972); *Cepero v. Tribunal*, 93 D.P.R. 245, 248 (1966); *Pueblo v. Cabrera Cepeda*, 92 D.P.R. 70, 74 (1965).

Por ende, al establecer y delimitar los criterios que comprende el concepto de motivos fundados, el Alto Foro ha expresado que el mismo es sinónimo de causa probable, término utilizado en el contexto de la expedición de una orden de arresto. *Pueblo v. Díaz Díaz,* 106 D.P.R. 348, 353 (1977); *Martínez Torres,* 120 D. P.R., a la pág. 504. De esta manera se crea un balance entre la excepción estatutaria y las referidas salvaguardas constitucionales. Es decir, al exigirle al funcionario público el mismo *quántum* de prueba que se le requiere cuando se enfrenta a un juez en solicitud de la emisión de una orden de arresto, registro o allanamiento, se limitan las circunstancias en que un funcionario pueda intervenir válidamente con una persona y sus efectos a través de dicha excepción; esto es, al imponer los mismos criterios de causa probable para arrestar sin orden, se evita una disparidad, constitucionalmente insostenible, entre el mandato constitucional y la excepción estatutaria.

Sobre este punto, expresa el Profesor Ernesto Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. I, sec. 6.12, 1991, a las págs. 387-388:

*"Volviendo a la exigencia de causa probable para el arresto sin orden --requisito constitucional bajo la Enmienda Cuarta--, se trata de una probabilidad al menos tan fuerte como la requerida para la expedición judicial de una orden de arresto. Esto significa que si la información que tenía el agente al arrestar sin orden, hubiera sido insuficiente para obtener una orden de arresto, no había causa probable – motivos fundados-- para el arresto sin orden, con consecuencia de invalidez de tal arresto y de cualquier registro incidental.*

*[...]".*

Así, pues, *"motivos fundados"* en la Regla 11 de las de Procedimiento Criminal, el estándar para el arresto sin orden, forzosamente es equivalente a *"causa probable"* en el sentido constitucional bajo la Enmienda Cuarta, so pena de vicio constitucional. Por supuesto, queremos decir que *"motivos fundados"* (Regla 11) tiene que ser al menos tanto como *"causa probable"* bajo la Enmienda Cuarta, que aplica a Puerto Rico. Y como sería imprudente que significara más que causa probable, *"motivos fundados"* es equivalente a *"causa probable.*

Ante el paralelismo entre los requisitos de los *"motivos fundados"* de la Regla 11 y la *"causa probable"* para expedir una orden de arresto, lo determinante para convalidar el arresto sin orden es si el mismo cumple con el requisito de causa probable; es decir, si la información que tenía el agente al momento de efectuar el arresto sin orden hubiera sido suficiente para obtener una orden de arresto. En ese contexto, resulta importante resaltar que un juez no debe expedir una orden de arresto a base de meras sospechas; tampoco se necesita convencer al juez de que se violó la ley más allá de duda razonable. Los *"motivos fundados"* constituyen el mínimo de información que razonablemente podría convencer a un juez de que existe *"causa probable"* para expedir una orden de arresto. Por ello, el agente que realice un arresto, sin la orden correspondiente, debe observar o estar informado de hechos concretos que razonablemente apunten a la comisión de un delito.

Con el propósito de determinar si un agente tenía motivos fundados para arrestar, sin orden, a un ciudadano, es indispensable analizar la información que le constaba a éste y el cuadro fáctico que éste tenía ante sí al momento del arresto para, entonces, determinar si esos hechos pudieron llevar a una persona prudente y razonable a creer que la persona que iba a ser arrestada había cometido, o iba a cometer, la ofensa en cuestión. Es decir, la determinación sobre la validez del motivo fundado y la legalidad del subsiguiente arresto, sin orden, de la persona, se hará basado en criterios de razonabilidad. Como bien señala la Profesora Dora Nevárez-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, San Juan, 5ta. Ed., Revisada, 1998, a la pág. 53, *"Distíngase que todas las situaciones en que se permite un arresto sin orden emitida previamente por un juez, presuponen la existencia de causa probable o alguna creencia razonable de que el arrestado es autor de un*

*delito".*

En otras palabras, para que existan motivos fundados cuando se efectúa un arresto sin orden judicial, deben existir circunstancias excepcionales que lo justifiquen. El agente del orden público que realiza tal arresto debe conocer o estar informado de hechos concretos que razonablemente apunten a la comisión de un delito. Meras sospechas no bastan. *Colón Bernier,* 148 D.P.R., a la pág. 142; *Pueblo v. Ortiz Alvarado,* 135 D.P.R. 41 (1994); *Pueblo v. Rey Marrero,* 109 D.P.R. 739 (1980).

La jurisprudencia ha ido definiendo cuándo existen tales motivos fundados. Por ejemplo, si una persona porta un arma de fuego a la vista de un policía, *Pueblo v. Corraliza Collazo,* 121 D.P.R. 244 (1988); un agente del orden público observa que se dispara un revólver contra otros, *Pueblo v. Rivera Rivera,* 117 D.P.R. 283, 293 (1986); una persona voluntariamente hace admisiones inculpatorias sobre la comisión de un delito ante un agente del orden público, *Pueblo v. Alcalá Fernández,* 109 D.P.R. 326, 334-335 (1980); un policía que ha recibido una confidencia advirtiéndole concretamente sobre el lugar y tiempo en que ha de cometerse un delito, al investigar dicha confidencia observa a la persona arrestada mientras estaba en el proceso de cometer un delito grave, *Pueblo v. Díaz Díaz,* 106 D.P.R. 348, 354 (1977); un agente del orden público observa una clara transacción de drogas, *Cabrera Cepeda,* 92 D.P.R., a las págs. 73-74; y cuando un agente del orden público que ha sido alertado sobre la transportación de un cargamento de droga ilícita, al investigar el asunto durante algunas horas, sucesivamente descubre el vehículo en que se transportó la droga, localiza cerca de éste a individuos que tienen signos que los relacionan con dicho vehículo, y al interrogarlos éstos responden de modo palpablemente falso, *Ruiz Bosch,* 127 D.P.R., a las págs. 770-772.

Por otro lado, se han identificado ocasiones donde no existían motivos fundados para el arresto de una persona sin orden judicial previa. Así, por el hecho de que la policía descubra un alambique ilícito en los predios de una finca propiedad de una persona, no constituye motivos fundados que permita arrestar a esa persona sin una orden judicial previa. *Pueblo v. Lebrón,* 108 D.P.R. 324 (1979). Del mismo modo, se ha declarado ilícito un arresto sin orden judicial de unas personas que guardaban marihuana en sus ropas mientras se encontraban pescando en un área de mar, efectuado por unos policías que realizaban una ronda preventiva en dicho lugar, precisamente porque no existían motivos fundados para ello. *Pueblo v. Vázquez Méndez,* 117 D.P. R. 170, 179 (1986).

No obstante, el hecho de que se ocupe evidencia delictiva no convalida un arresto ilegal. Es decir, no puede hablarse de *"registro incidental a un arresto válido"* si la intervención inicial fue ilegal. La ocupación de la evidencia de forma ilegítima es entonces *"fruto del árbol ponzoñoso",* frase que describe de forma ilustrativa la doctrina adoptada. *Pueblo v. Miranda Alvarado,* 143 D.P.R. 356, 368-369 (1997).

Por último, nuestro Tribunal Supremo expresó en *Pueblo v. Luzón,* 113 D.P.R. 315, 324 (1984), que:

*"el concepto de motivos fundados, consignado en la Regla 11 de Procedimiento Criminal, no es incompatible con la persecución del crimen, cuando actúen coordinada y concertada los agentes del orden público. A tal efecto, se ha sostenido que el conocimiento de cada agente -cuando trabajan cerca y se mantienen informados-, es atribuible a los demás. Se puede establecer la existencia de causa probable para justificar un arresto sin orden, basado en información policíaca colectiva al momento del mismo, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las circunstancias. Basta con que el agente de la policía que inició la cadena de comunicaciones tenga información de primera mano."*

A la luz del marco doctrinal expuesto, analizamos los hechos y eventos ante nuestra consideración.

En el presente caso, la menor solicitó se suprimiera la evidencia incautada por haber sido ocupada sin orden

judicial previa y que no había motivos fundados para la intervención. Surge del testimonio reseñado del policía Rosas Vega, que éste observó una guagua detenida en medio de la calle con cuatro ocupantes, escuchó detonaciones provenientes del interior de la guagua; al escucharlas se colocó a un lado de la carretera y detuvo su vehículo por breves momentos en espera de que las detonaciones cesaran. Estando detenido, observó el vehículo de donde provenían las detonaciones que resultó ser una guagua Pathfinder, la que siguió su marcha pasándole por el lado. Esperó que pasaran y dobló en forma de *"u"* a los fines de seguir la guagua, anotando su matrícula. Acto seguido, llamó al Cuartel de la Policía Municipal informó lo sucedido, dio su localización y solicitó una patrulla, la que posteriormente llegó conducida por la Sargento Collado Morales. El policía Rosas Vega le pasó por el lado a la patrulla y le señaló a la Sargento Collado Morales la guagua, quien se unió a la persecución. Finalmente, detuvieron la guagua y ocuparon el arma en cuestión.

Ante esas circunstancias, no cabe la menor duda de que el policía Rosas Vega tenía motivos fundados para creer que los arrestados habían cometido un delito en su presencia. El arresto se realizó inmediatamente, razón por la cual no había necesidad de gestionar una orden de arresto.

Tampoco era necesario que el retén Miguel Villanueva, quien recibió la información del policía Rosas Vega y lo transmitió a la Sargento Collado Mercado, declarara como parte de la cadena de eventos para establecer los motivos fundados que dieron margen al arresto. Como hemos informado, en consideración a la información ofrecida por el policía Rosas Vega al retén Villanueva es que se contacta a la Sargento Collado Morales. El policía Rosas Vega estuvo presente cuando se interviene y arresta a los ocupantes de la guagua Pathfinder incluyendo a la menor. Como correctamente expresó el foro recurrido, el testimonio del retén no añade nada a la cadena de hechos, por lo cual no era necesaria su declaración. El retén fue un mero accesorio en esa cadena.

Por otro lado, el caso ante nuestra consideración es distinguible del de *Pueblo v. Martínez Torres,* 120 D.P. R. 496 (1988). En el nuestro, el foro recurrido evaluó todos los pormenores del testimonio del policía Rosas Vega quien inició la cadena de eventos que culminaron en el arresto y la incautación del arma de fuego. Es decir, el foro recurrido evaluó los motivos fundados que tuvieron el policía Rosas Vega y la Sargento Collado Morales para intervenir con los arrestados. Como hemos expresado, no era necesaria la declaración del retén Villanueva en la vista de supresión, pues su participación fue de un mero accesorio, su testimonio nada aportaría a la vista.

En el caso de *Martínez Torres*, el Sargento Meléndez Zambrana de la Policía de Puerto Rico le transmitió a sus subalternos, unos agentes de la policía, quienes realizaban en un auto oficial no identificado una ronda preventiva contra el tráfico de drogas en un barrio de Ponce, a través del sistema de radioteléfono de su vehículo oficial sobre cierta transacción de drogas realizada en La Cantera de Ponce. Describió el vehículo involucrado en la transacción y por dónde iba discurriendo. Diez (10) minutos más tarde, los agentes vieron pasar al vehículo descrito por radioteléfono. Luego de otros incidentes, lograron detener al vehículo, arrestaron a Martínez Torres y al registrarlo encontraron cien (100) *decks* de heroína en sus bolsillos. Luego de ser acusado, Martínez Torres solicitó la supresión de la evidencia fundamentada en que fue ocupada en el curso de un arresto y registro ilegal. El Tribunal de Primera Instancia declaró no ha lugar su solicitud. Inconforme, apeló ante nuestro Tribunal Supremo, quien revocó por no haberse presentado prueba sobre los motivos fundados que pudo haber tenido el Sargento Meléndez Zambrana para solicitar ayuda de sus subalternos. Pudo haber sido por información recibida de algún confidente o informante de la policía, por conocimiento personal, por información recibida de algún otro agente con conocimiento personal de la información, o por información brindada por algún testigo presencial o participante en la alegada transacción. En ese caso, no se presentó testigo alguno con conocimiento sobre los motivos fundados que tuvo el Sargento Meléndez Zambrana para solicitar por el sistema de radioteléfono la ayuda de los agentes que culminó en el arresto de Martínez Torres por violación a la Ley de Sustancias Controladas y la Ley de Vehículos y Tránsito. Es decir, el tribunal no tuvo la oportunidad de evaluar testimonio alguno sobre motivos fundados.

En consideración a lo dicho, se deniega la expedición del auto solicitado.

**Notifíquese inmediatamente por telefax y correo ordinario.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones